## J. B. ALEXANDER & CO. v. JOHN S: CAIN, ETC.

**Brokers—Contract—Acceptance and Rejection of Orders to Purchase Stocks.**

> Under the contract the appellants did not have the right to accept and reject orders from appellee at pleasure. His margin was sufficient to authorize the purchase of stocks on his order and the refusal of appellants to buy stocks for the appellee resulted in a loss to him of $7,000. This loss was the direct and immediate consequence of a plain and palpable violation by appellants of their contract with appellee, and they are, therefore, responsible for the loss.

APPEAL FROM LOUISVILLE CHANCERY COURT.

April 30, 1872.

OPINION OF THE COURT BY JUDGE LINDSAY:

The existence of the contract between appellants and Barrett is sufficiently established by the correspondence between those parties.

That Barrett permitted Cain to operate in his name and under his contract, with the knowledge of Alexander & Co., is also clearly shown.

The evidence also shows that Cain had authority to use Barrett's name in making the order for the purchase of the Erie stock on the 14th of November, 1868. It is true that Barrett had returned from the country, but this fact does not seem to have been known by Cain, when the first telegram was sent, and Barrett ratified what had been done by turning over to him the answer to the dispatch, and permitting him to continue the telegraphic correspondence in his name. In the letter written by Barrett on the evening of the 14th of November, he regrets the quarrel between Cain and appellants, but does not repudiate the acts of Cain, nor intimate that the use of his name was unauthorized or unwarranted.

Under their contract with Barrett, appellants did not have the right to accept or reject orders at pleasure. No such right was reserved in their letter of the 12th of September, 1867, and their uniform practice after that time had been to purchase such stocks as were ordered. And only two months before the order of the 14th of November, 1868, they had bought Erie stocks upon Barrett's order.

The evidence also conduces to show that Cain's margin was sufficient to authorize the purchase of the Erie ordered. That he had over $4,700 to his credit is manifested by the fact that five days thereafter Barrett's check for $5,000 drawn on Cain's account was paid. Besides this, the reason assigned for refusing to make the purchase was not that the margin was insufficient, but that the stocks ordered were not worthy of confidence as collaterals.

The refusal of appellants to buy the 500 shares of Erie on the 14th, and sell the same on the 16th of November, resulted in a loss to Cain of near $7,000. This loss was the direct and immediate consequence of a plain and palpable violation by appellants of their contract with Barrett, under which they had consented that Cain might operate, by theretofore buying and selling stocks which they knew were being bought and sold upon his account. That it was possible for Cain, after the reception of appellants' first telegram on the 14th of November, to have withdrawn his margin from that house, and made a new contract with some other firm, and thus secured the benefit of the speculation he now complains of losing, may be admitted, and yet such a possibility will not exonerate appellants from responsibility. They had no right to demand the exercise by one of their customers of such extraordinary diligence, in order to enable them to escape the consequences of a violation of their contract with him. That Cain was a customer of theirs, and that they had reason to believe that the order made on the 14th of November was for his benefit, appears from their reply to his answer and cross-petition. He charges directly and explicitly that he made such order through his agent, and appellants reply that "whether or not defendant (Cain) had any interest in the purchase and sales ordered by the said Barrett, plaintiffs do not know and are unable to state." They do not say that they did not have information upon the subject, nor that they did not *believe* that Cain was interested. The proof in the case shows that Barrett was not a necessary party to this suit, although Cain claims, under the provisions of his contract, Barrett's letters and deposition show clearly that he sets up no claim to the damages in controversy, and that Cain operated for himself, with his express consent, and with the implied consent of appellants.

12

Appellants can not complain that Stickney was made a party. If they are responsible to Cain for the amount adjudged against them, it can not prejudice them to have the judgment with Cain's consent rendered in favor of Stickney. Besides this, appellants are non-residents, and Stickney might have assigned the claim back to Cain in order to enable him to use it as a set-off against the amount due them on the purchase of the house and lot. Stickney and Cain both being parties to the litigation, the judgment in this case is a complete bar to any other suit by either of them on account of the violation of contract complained of. It appearing that Stickney was the assignee of the bond for title to the house and lot, as well as the claim for damages, the chancellor did not abuse a sound discretion in requiring him to be made a party, and further than this appellants did not except to the order requiring him to be made a party. If it be conceded that Cain attempted to conceal the existence of the claim here asserted in a proceeding had against him by a creditor, that fact can not avail as a defense to this suit. Nor does the proof of Cain's statements when examined by Colonel Wood show that he did not regard appellants as responsible to him for failing or refusing to obey his order for the purchase of the Erie stock.

The manner in which Cain obtained the possession of the house and lot, and his object in making the purchase, are matters of but little consequence in the settlement of the litigation.

Appellants do not seek to rescind the contract of sale, nor to recover possession of his house and lot, but to enforce a specific execution of the contract, and to compel Cain to retain possession of the property.

The chancellor properly refused to allow Mertz to be made a party. His claim does not grow out of, and is in no way affected by the cause of action set out by appellants; nor is there anything to show that Cain was authorized to use it as a set-off to appellants' claim against him.

The judgment is affirmed upon both the original and cross-appeal.

*Bullock, Anderson & Weissinger, for appellants.*

*Thompson, Booth & Kline, for appellees.*